UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-CR-320 (ABJ) |
| | : | |
| JEREMY RYAN SORVISTO, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum. For the reasons set forth herein, the government requests that this Court sentence Jeremy Ryan Sorvisto to 30 days' incarceration and $500 in restitution.

**I.      Introduction**

Jeremy Sorvisto and his associate, Karl Dresch, drove hundreds of miles from the Upper Peninsula in Michigan to attend the rally in Washington, D.C. on January 6, 2021. Sorvisto told an associate that he was going to "make the country safe," and later, after participating in the riot and entering the U.S. Capitol for approximately 25 minutes, bragged "take this country back" in a text message. He later ordered his partner to delete the pictures from D.C., and instructed his friends to destroy the distinctive jacket he had worn throughout the Capitol. He did not come forward after his associate, Dresch, was arrested and imprisoned, months before the defendant was arrested. The defendant's actions merit a sentence of incarceration.

1

## II.      Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

The government refers to the general summary of the attack on the U.S. Capitol. *See* ECF No. 19 (Statement of Offense), at 1-7. Each rioter's actions – from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day.

*Jeremy Sorvisto's Role in the January 6, 2021 Attack on the Capitol*

On or about January 4, 2021, Jeremy Sorvisto and Karl Dresch traveled from the Upper Peninsula of Michigan to the Washington, D.C. area. On January 5, 2021, the defendant texted another individual that, "Mader (sic) to Ohio. Bought a taser." He later texted, "Nah, we gotta save the country." After staying overnight in the Northern Virginia area, Dresch and the defendant went to Washington, D.C., on January 6, 2021, to attend the events in D.C.

Dresch and Sorvisto likely made their way through tear gas and unruly crowds on the west side of the U.S. Capitol to make their entrance into the Capitol building at approximately 2:25 p.m. at the Senate West Wing doors, less than 15 minutes after the initial breach. The photographs below show the scene of the U.S. Capitol before, and slightly after, their entry into the west side of the Capitol.





3

Sorvisto and Dresch observed the scene below, as shown in a photo taken from the cell phone device Sorvisto was using on January 6, 2021.



When Sorvisto and Dresch entered the Capitol at approximately 2:25 p.m., they would likely have seen broken glass, and heard alarms when they went through the Senate West Wing doors, as shown below.



Sorvisto and Dresch then traversed the Capitol for approximately 25 minutes, entering the Crypt area, where they took selfie-photographs, including the photo below, and the Visitor's Center.



As shown in the photograph above, Sorvisto wore a distinctive jacket with neon-yellow stripes, resembling a firefighter jacket, and a red baseball cap. Using another individual's

Facebook account, he indicated that "[t]hey're gassing us. Lol we got protection tho (sic)." He texted another individual that, "Be (sic) breached the capital (sic) house turn news on." While inside the Capitol, the defendant was observed picking up litter, and followed the instructions of law enforcement who told him to leave the Capitol. Dresch and Sorvisto departed at approximately 2:50 pm through a window, because the door was blocked by law enforcement seeking to prevent other rioters from gaining access to the Capitol.

The defendant texted, "Take this country back," later that afternoon. Dresch and Sorvisto returned later in the evening to the hotel. An associate of Sorvisto's posted pictures of Sorvisto inside the Capitol on social media. On January 7, 2021, Sorvisto texted his associate to "delete them dc pics." Over the next week, Dresch, Sorvisto, and others traveled through several states before ultimately returning to Michigan. Dresch was arrested soon after they returned. The defendant disposed of the defendant's distinctive jacket by putting it in a trash bag and requesting that his associates dispose of the bags.

*The Charges and Plea Agreement*

The defendant was arrested on a criminal complaint charging four misdemeanors, on April 7, 2021. He was charged by information with four misdemeanors on April 29, 2021, and appeared before this Court for arraignment on July 3, 2021.

Dresch was indicted in February 2021, and ultimately pled guilty to a misdemeanor for parading, picketing, and demonstrating inside the U.S. Capitol, in violation of 18 U.S.C. § 5104(e)(2)(G). Dresch was sentenced to 6 months' imprisonment (time served) and restitution of $500 on August 3, 2021.

The defendant pled guilty to 40 U.S.C. § 5104(e)(2)(G), parading, picketing, and

demonstrating inside the U.S. Capitol, on September 3, 2021. By plea agreement, Sorvisto agreed to pay $500 in restitution to the Architect of the Capitol. Pursuant to the terms of the plea agreement, the defendant met with the government and answered questions regarding his travel to and from the U.S. Capitol on January 6, his itinerary on January 6, and proffered details about some of the incidents he witnessed on that day.

### III. Statutory Penalties

The defendant faces a sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. The defendant must also pay restitution under the terms of his or her plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as described below, all of the Section 3553(a) factors weigh in favor of a period of incarceration.

### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol, on January 6, 2021 is a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms; indeed, it was the one of the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events.

While each defendant should be sentenced based on their individual conduct, this Court should note that each person who entered the Capitol on January 6 without authorization did so under the most extreme of circumstances. As they entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement officials and smelled chemical irritants in the air. No rioter was a mere tourist that day.

Additionally, each defendant's individual felony or misdemeanor conduct must be assessed on a spectrum. This Court, in determining a fair and just sentence, should look to a number of critical factors, to include: (1) whether, when, how the defendant entered the Capitol building; (2) whether the defendant engaged in any violence or encouraged violence[1]; (3) whether the defendant engaged in any acts of destruction or encouraged destruction; (4) the defendant's reaction to acts of violence or destruction by others; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the

---

[1] While this factor is helpful in some cases, it is also somewhat deceptive, given the fact that if the defendant *had* engaged in violent conduct, there would likely be additional criminal liability attached.

defendant cooperated with, or ignored commands from law enforcement officials; and (9) whether the defendant demonstrated sincere remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each defendant on a spectrum as to their fair and just punishment. It should further be noted in determining a defendant's placement on a spectrum, that a defendant who participated or encouraged acts of violence or destruction would likely be subject to additional charges and/or penalties associated with that conduct, rather than a misdemeanor penalty.

Sorvisto and Dresch approached the west side of the U.S. Capitol at a relatively chaotic time. They likely would have seen violence against others, in addition to discharges of chemical irritants outside the Capitol.

Sorvisto and Dresch entered through the Senate Wing doors at approximately 2:25 p.m., within the first 15 minutes of the breach at that entrance, and remained within the Capitol for approximately 25 minutes. Sorvisto knew that what he had done was wrong – he disposed of his distinctive jacket and instructed his partner to delete the digital photographs of him at the U.S. Capitol on January 6. Sorvisto also did not show remorse for his conduct, nor did he admit his unlawful conduct to law enforcement officials even after his associate, Dresch, was arrested and charged. Underpinning one of the more consequential (and well-documented) crimes in American history is the need for law enforcement to accurately understand what happened on January 6. Those who encourage the destruction of evidence, even if they are given the benefit of a plea bargain, merit additional serious scrutiny given the misconduct.

Accordingly, the nature and the circumstances of this offense establish the need for a sentence of incarceration in this matter.

### B. The History and Characteristics of the Defendant

The defendant has a prior criminal conviction for operation while intoxicated causing serious injury from 2007. He was sentenced to one day of incarceration and two years of probation, as well as an $820 fine. He was discharged from probation in November 2008. (PSR ¶ 28). Although his criminal conviction did not involve conduct as serious as that of associate, Dresch, it merits consideration in an analysis of the § 3553 factors and leans in favor of a sentence of incarceration.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an assault on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[2] As with the nature and circumstances of the offense, this factor supports a sentence of home detention as one form of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

---

[2] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2) (B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The demands of general deterrence weigh in favor of some form of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. For the violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70; *see United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37 ("As other judges on this court have recognized, democracy requires the cooperation of the citizenry. Protesting in the Capitol, in a manner that delays the certification of the election, throws our entire system of government into

disarray, and it undermines the stability of our society. Future would-be rioters must be deterred.") (statement of Judge Nichols at sentencing).

The gravity of these offenses demands deterrence. This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Sorvisto's actions, and attempts to conceal them, demonstrate the need for specific deterrence for this defendant. Despite knowing that what he and Dresch (and others) did on January 6 was wrong, most notably because of Dresch's arrest and indictment following their return to the Upper Peninsula, Sorvisto did not come forward or attempt to cooperate with law enforcement prior to his own arrest. He told his associate to delete the pictures from D.C. and disposed of his distinctive jacket that he wore on that date. A sentence of incarceration is needed to deter the defendant from participating in this kind of unlawful activity again, and attempting to conceal his illicit conduct.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on law enforcement officers, to conspiracy to corruptly interfere with

Congress.³ Each offender must be sentenced based on their individual circumstances, but within the backdrop of the January 6 riot. Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor defendants will generally fall on the lower end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021 were not minor crimes. A probationary sentence should not become the default.⁴ The government agrees with Judge Lamberth's admonition that "I don't want to create the impression that probation is the automatic outcome here because it's not going to be." *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19; *see also United States v. Valerie Ehrke*, 1:21-cr-00097 (PFF), Tr. 9/17/2021 at 13.

The government and the sentencing courts have already begun to make meaningful distinctions between offenders. Those who engaged in felonious conduct are generally more dangerous, and thus, treated more severely in terms of their conduct and subsequent punishment. Those who trespassed, but engaged in aggravating factors, such as Dresch and others, merit serious consideration of incarceration. Those who trespassed, but engaged in less serious aggravating

---

³ Attached to this supplemental sentencing memorandum is a table prepared by the United States Attorney's Office providing additional information about the sentences imposed on other Capitol breach defendants.

⁴ Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation, including in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); and *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

factors, deserve a sentence more in line with minor incarceration or home detention. After a review of the applicable Section 3553(a) factors, the government believes that the defendant's conduct falls in the latter category, and that a sentence of minor incarceration is appropriate.

The defendant has pleaded guilty to Count Four of the Information, a violation of 40 U.S.C. § 5104(e)(2)(G), which is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences—such as how a defendant entered the Capitol, how long he remained inside, the nature of any statements he made (on social media or otherwise), whether he destroyed evidence of his participation in the breach, etc.—help explain the differing recommendations and sentences. And as that discussion illustrates, avoiding unwarranted disparities requires the courts to consider not only a defendant's "records" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or cooperation with law enforcement. *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no unwarranted disparity regarding lower sentence of codefendant who, unlike defendant, pleaded guilty and cooperated with the government).

Even in Guidelines cases, sentencing courts are permitted to consider sentences imposed on co-defendants in assessing disparity. *E.g., United States v. Knight*, 824 F.3d 1105, 1111 (D.C.

14

Cir. 2016); *United States v. Mejia*, 597 F.3d 1329, 1343-44 (D.C. Cir. 2010); *United States v. Bras*, 483 F.3d 103, 114 (D.C. Cir. 2007). The Capitol breach was *sui generis*: a mass crime with significant distinguishing features, including the historic assault on the seat of legislative branch of federal government, the vast size of the mob, the goal of impeding if not preventing the peaceful transfer of Presidential power, the use of violence by a substantial number of rioters against law enforcement officials, and large number of victims. Thus, even though many of the defendants were not charged as conspirators or as codefendants, the sentences handed down for Capitol breach offenses is an appropriate group for purposes of measuring disparity of any future sentence.

As the number of sentences in the Capitol breach misdemeanor cases increase and the pool of comparators grows, the effect on sentences of obviously aggravating considerations should become more apparent. The same is true for obviously mitigating factors, such as whether the defendant followed law enforcement's direction to exit the Capitol.

There is no automatic formula that determines an appropriate sentence in a situation such as these cases present with such a large number of defendants. The government reviews certain factors to determine where on the spectrum each defendant falls. Here, the defendant entered the Capitol during a critical and early breach, lacked meaningful penitence, and almost immediately encouraged obstructive-like behavior from his associates, by telling them to delete pictures and dispose of his jacket. He knew his actions on January 6 were wrong, as evidenced by the fact that he told others to destroy evidence to hide his participation. His associate, Dresch, was arrested and charged months before the defendant, yet he did not use the opportunity to come forward and cooperative with the FBI, nor show remorse for his actions. The government acknowledges, however, that the defendant followed law enforcement officers' direction and exited the Capitol,

15

and that this should be considered among the mitigating factors.

To avoid unwarranted sentencing disparities, the Court should also consider the sentence Dresch received. Although they participated in the Capitol Breach together, there are some important differences between Dresch and the defendant. Dresch's conduct was more egregious than the defendant: Dresch posted about the riot before, during, and after the events of January 6, giving rise to "concerns that defendant was not only an enthusiastic, boastful participant in the assault on democracy that day, but that he stands ready to do it again." *United States v. Karl Dresch*, 21-CR-71, Memo. Op. ECF No. 25, at 18 (May 27, 2021). Moreover, Dresch had a criminal record for fleeing and eluding law enforcement, and repeat offenses for failures to comply with law enforcement direction. In addition, a search of Dresch's residence revealed multiple firearms and hundreds of rounds of ammunition, despite his status as a prohibited person. In contrast, search warrants of social media and the defendant's phone did not reveal the kind of statements that appeared in Dresch's Facebook account. While Dresch and the defendant's conduct are equally concerning, Dresch's overall conduct and history demand greater punishment and deterrence than the defendant, thereby driving the government's recommendation. Given the distinction in their conduct and criminal histories, the government believes that the Section 3553 factors support a shorter sentence of incarceration for Sorvisto.

The Court should also consider the sentences for defendants who engaged in destruction of evidence following the riot, such as Sorvisto. For example, in *United States v. Leonard Gruppo*, the defendant received a sentence of 90 days' home detention, 24 months' probation, and a $3,000 fine; some of the factors the government weighted in its recommendation that the defendant receive a custodial sentence included the defendant's destruction of video and photographic evidence on

16

his phone following the riot. *See United States v. Leonard Gruppo*, 21-CR-391 (BAH), *ECF 24 and 32*. In addition, in *United States v. Matthew Mazzocco*, 21-CR-00054 (TSC), the defendant engaged in similar conduct inside the Capitol to Sorvisto, but also was believed to have deleted his Facebook account and body camera video following the riot. Mazzocco received a sentence of 45 days' incarceration, 60 hours of community service, and restitution. *Id. ECF No. 34*.

The goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

### F. Restitution

For this case, the parties have agreed that the Court may impose restitution in the amount of $500. This amount fairly reflects the defendant's role in the offense and the damages resulting from his conduct. This amount properly reflects the defendant's role, but also considers the various legal and factual issues associated with calculating the actual losses for property damage to the United States Capitol and incurred by law enforcement agencies, additional costs incurred for

security personnel, and bodily injuries sustained by law enforcement personnel. In consideration of these factors, the restitution amount reflected in the plea agreement fairly represents an apportionment of the defendant's liability and, therefore, is proper in this case.

## V.     Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. The government recommends, in weighting these factors as outlined above, that this Court sentence the defendant to 30 days' incarceration and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior.

                                                     Respectfully submitted,

                                                     MATTHEW M. GRAVES
                                                     UNITED STATES ATTORNEY
                                                     D.C. Bar No. 481052

                          By:     */s/ Jennifer L. Blackwell*
                                                     Jennifer Leigh Blackwell
                                                     Assistant United States Attorney
                                                   D.C. Bar No. 481097
                                                   555 4th Street, N.W.
                                                   Washington, D.C. 20530
                                                   Phone: (202) 803-1590
                                                   Jennifer.blackwell3@usdoj.gov

Dated:   December 8, 2021

**CERTIFICATE OF SERVICE**

On this 8th day of December, a copy of the foregoing was served on counsel of record for the defendant via the Court's Electronic Filing System.

/s/ *Jennifer L. Blackwell*
Jennifer Leigh Blackwell
Assistant United States Attorney
Jennifer Leigh Blackwell
Assistant United States Attorney
D.C. Bar No. 481097
555 4th Street, N.W.
Washington, D.C. 20530
Phone: (202) 803-1590
Jennifer.blackwell3@usdoj.gov